UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | 1:20-cr-00305-JMS-TAB |
| *vs.* | ) | |
| | ) | |
| RYAN PHELPS, | ) | -01 |
| | ) | |
| *Defendant.* | ) | |

## ORDER

Defendant Ryan Phelps has been charged by Superseding Indictment in this case with one count of Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §922(g)(1). [Filing No. 87.] Presently pending before the Court is Mr. Phelps' Combined Motion to Suppress Search Warrant and All Items Seized from Search of 3709 Drexel Avenue, Indianapolis, and All Statements Taken from Ryan Phelps; Franks Motion; Motion to Dismiss Charge; and For Combined Hearing on Motions ("Motion to Suppress"). [Filing No. 125.] The Motion is now ripe for the Court's ruling.

### I.
#### BACKGROUND

#### A.    Investigation of August 13, 2020 Homicide

On August 13, 2020, Fishers Police Department ("FPD") officers were dispatched to the Best Choice Fieldhouse for reports of a "scuffle" that resulted in gunfire. [Filing No. 125-2 at 8.] When Detective LaShawn Tyler and other officers arrived at the scene, they found that two juvenile males, TP and WS, had been shot. [Filing No. 125-2 at 8.] TP later died from his injuries. [Filing No. 125-2 at 7.]

During his investigation, Detective Tyler spoke to a witness who said that the August 13 homicide was in retaliation for another homicide that occurred on March 29, 2020, in which TP and John Jennings II exchanged gunfire with two brothers with the last name McCullough. [Filing No. 125-2 at 8.] The Indianapolis Metropolitan Police Department ("IMPD") identified the brothers as Da'Monty and Da'Mario McCullough. [Filing No. 125-2 at 8.] A witness stated that during the March 29 incident, Mr. Jennings shot and killed Da'Mario and that Da'Monty then shot and killed Mr. Jennings. [Filing No. 125-2 at 8.] Detective Tyler reviewed IMPD's report regarding the March 29, 2020 homicide investigation, which stated that Mr. Jennings and Da'Mario died from gunshot wounds, implicated Mr. Jennings and Da'Monty as the shooters, and confirmed that TP was present at the scene of the homicide. [Filing No. 125-2 at 13-14.] IMPD detectives advised that since the March 29 homicide, Da'Monty had been feuding with TP over the death of Da'Mario. [Filing No. 125-2 at 11.]

A witness reported that the McCullough family wanted to kill TP so that he could not work with law enforcement to prosecute Da'Monty for the March 29 homicide. [Filing No. 125-2 at 8-9.] Another witness reported that TP may have been the shooter who killed Da'Mario and that TP began receiving escalating threats a week after the March 29 homicide. [Filing No. 125-2 at 9.] Detective Tyler interviewed WS's parents, who confirmed that the August 13 homicide stemmed from the March 29 homicide in which Da'Mario and Mr. Jennings were killed. [Filing No. 125-2 at 11.] Other witnesses also told Detective Tyler that Da'Monty was involved in the August 13 murder of TP in retaliation for the March 29 homicide of Da'Mario and social media posts also indicated the same. [Filing No. 125-2 at 14-18.]

Detective Tyler also spoke to WS in the emergency room on August 13 and he stated that the shooter was driving a beige, four-door sedan with rectangular taillights that he thought was an

older Toyota.  [Filing No. 125-2 at 10.] WS stated that he did not know who shot him, but that he believed that TP may have known.  [Filing No. 125-2 at 11.]

Detective Tyler also viewed surveillance video from businesses in the area of Best Choice Fieldhouse on the evening of August 13 and was able to identify a suspect vehicle in the video – a tan Honda Accord with an "In God We Trust" license plate.  [Filing No. 125-2 at 14.]  The car had a dark-colored, horizontal runner or accent trim running along the side, had door handles that appeared to be dark-colored, was missing hubcaps on the right front passenger's side, and had an obvious defect to the rear passenger's side quarter panel near the taillight.  [Filing No. 125-2 at 14.]  Surveillance video showed the suspect car arriving in the area of Best Choice Fieldhouse around 7:59 p.m., the shooting occurred at approximately 9:40 p.m., and the suspect car was seen fleeing the scene thereafter and making a U-turn through the grass.  [Filing No. 125-2 at 14.]

Detective Tyler then obtained Da'Monty's cell phone number from IMPD Detective Howard, who had confirmed the number directly with Da'Monty.  [Filing No. 125-2 at 18-19.] Detective Howard also gave Detective Tyler Da'Monty's address – 5066 Emerson Court South Drive, Indianapolis.  [Filing No. 125-2 at 11.]  Detective Tyler reviewed Da'Monty's AT&T cell phone records, which provided the approximate location of Da'Monty's cell phone on August 13 and indicated that for most of that day, his phone was near his residence at 5066 Emerson, but that at 10:20 p.m., his phone moved a few blocks northwest of his residence for 13 minutes, then returned to the area of his residence at 10:34 p.m.  [Filing No. 125-2 at 19.]  The records then indicated that the phone moved a few blocks north of his residence at 10:40 p.m. and then returned to the area of his residence at 11:00 p.m.  [Filing No. 125-2 at 19.]

Detective Tyler identified Kimberly Barnes as Da'Monty's grandmother and Bureau of Motor Vehicle records indicated that Kimberly Barnes owned a gold 2000 Honda Accord, license

number CEB167, which matched the description and video of the suspect vehicle.  [Filing No. 125-2 at 19.]  The registration address for the Honda Accord was 5066 Emerson Court South Drive, the address where Da'Monty was living, and Detective Tyler learned from FPD Intelligence Analysts that Kimberly Barnes also resided at 5066 Emerson Court South Drive and was a partial owner of 3709 North Drexel Avenue, Indianapolis.  [Filing No. 125-2 at 19.]

On August 20, 2020, while conducting a spot check of 3709 North Drexel Avenue, FPD saw a gold Honda Accord with license number CEB167 parked in the driveway.  [Filing No. 125-2 at 19-20.]  Detective Tyler viewed photographs of the vehicle and saw that the car had an "In God We Trust" license plate, a dark-colored, horizontal runner, and dark-colored door handles, and was missing a hubcap on the front passenger's side tire – all characteristics matching the suspect vehicle.  [Filing No. 125-2 at 19-20.]  Detective Tyler believed that the car parked at 3709 North Drexel Avenue was the vehicle involved in the August 13 homicide.  [Filing No. 125-2 at 20.]  Detective Tyler also recognized that 3709 North Drexel Avenue was within the area northwest of Da'Monty's home in which Da'Monty's cell phone was located immediately after the August 13 homicide.  [Filing No. 125-2 at 19.]

**B.      Ownership of 3709 North Drexel Avenue**

In investigating the August 13 homicide, FPD Intelligence Analysts gathered information regarding the ownership of 3709 North Drexel Avenue.  [Filing No. 127-2.]  Specifically, Detective Tyler received an email from FPD Intelligence Analyst Marisela Sanchez on August 20, 2020 – the same day Detective Tyler submitted a probable cause affidavit for a search warrant for 3709 North Drexel Avenue – in which she stated that she "searched IMPD Assessor Property cards by owner name Kimberly Barnes and came across the address at 3709 N Drexel Avenue where Kimberly Barnes was listed as a registered owner."  [Filing No. 127-1 at 7.]  Detective Tyler also

received an email from FPD Intelligence Analyst Kyle McFatridge on August 20, 2020 in which

he stated that "[b]oth Tre Anthony BARNES and Kimberly BARNES are listed as owners" of 3709

North Drexel Avenue. [Filing No. 127-1 at 9.] Detective Tyler also reviewed an "Info Blast" from

FPD Intelligence which indicated that Kimberly Barnes was a registered owner of 3709 North

Drexel Avenue. [Filing No. 127-1 at 12.]

> ### C.     The August 20, 2020 Search Warrant

On August 20, 2020, Detective Tyler sought a search warrant for 3709 North Drexel

Avenue based on the information he had gathered during his investigation. [Filing No. 127-1 at

5.] The search warrant affidavit was 16 pages and described Detective Tyler's investigation in

detail. [Filing No. 125-2 at 6-21.]

First, Detective Tyler detailed the information which led FPD to suspect Da'Monty in the

August 13 homicide, including numerous witness statements, social media posts, Da'Monty's

connection to a vehicle similar to the suspect vehicle, and IMPD's reports of an ongoing feud

between Da'Monty and TP. [Filing No. 125-2 at 6-21.] Detective Tyler also provided information

which connected Da'Monty, the residence at 3709 North Drexel Avenue, and the August 13

homicide – including the description of the suspect car from surveillance video and witness

statements, FPD's location of the car at 3709 North Drexel Avenue, and the unique characteristics

of the car – and stated, "I believe this to be the vehicle involved in the shooting." [Filing No. 125-

2 at 19-20.] Detective Tyler also noted that the car was registered to Da'Monty's grandmother,

Kimberly Barnes. [Filing No. 125-2 at 19.] Detective Tyler described the location of Da'Monty's

phone throughout the night of August 13, including that less than an hour after the murder, the

phone was located a few blocks north of his house, in an area that encompassed 3709 North Drexel

Avenue, where the police also located the suspect vehicle. [Filing No. 125-2 at 19.] He described

the connection between Kimberly Barnes, Da'Monty, and 3709 North Drexel Avenue, stating that "I furthered my investigation and learned the Marion County Assessor's Office had a residence of 3709 N Drexel Ave. Indianapolis, IN listed for Kimberly [Barnes]," "it has been established that Kimberly Barnes also is a partial owner of the address at 3709 N. Drexel Avenue," and "[d]etectives personally observed the [gold Honda Accord] to be sitting on the property at 3709 N. Drexel Avenue, the address partially owned by Kimberly Barnes."  [Filing No. 125-2 at 19-20.] Finally, Detective Tyler explained what he thought law enforcement would find in the residence at 3709 North Drexel Avenue, stating "firearms are possessed for longer periods of times than other illegal items such as narcotics [and] are valuable,…more difficult to destroy, discard, and hide and are often kept for protection and use in ongoing criminal activity.  I believe that if this search warrant is granted firearm(s) will likely be recovered from the residence located at 3709 N. Drexel Ave."  [Filing No. 125-2 at 20.]

### D.   Search Warrant Execution and Additional Warrant

On August 20, 2020, Judge Paul Felix granted the requested search warrant for 3709 North Drexel Avenue.  [Filing No. 125-2 at 3-5.]  The search warrant was executed the following day and Mr. Phelps was the only one at the residence, which was being rented by Mr. Phelps' brother, Nicholas Holder.  [Filing No. 125-5; Filing No. 125-6.]  Mr. Holder rented 3709 North Drexel Avenue from Kimberly Barnes, who he "understood was the owner."  [Filing No. 125-6 at 1.]  Mr. Phelps was often at the residence as a guest of Mr. Holder.  [See Filing No. 125-6 at 2.]

During the search, FPD located a Kari's Guns KG15 rifle in the northwest bedroom of the residence and then obtained a second warrant for items found in plain view that were not included in the original warrant and for permission to take a buccal swab from Mr. Phelps.  Based on the

- 6 -

second warrant, the KG15 rifle was seized, officers obtained a DNA sample from Mr. Phelps, and it was later determined that Mr. Phelps' DNA was on the grip of the KG15 rifle.[1]

### E.    Mr. Phelps is Indicted

On November 19, 2020, Mr. Phelps was indicted for Unlawful Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1).  [Filing No. 1.]  A Superseding Indictment containing the same charge was filed on June 6, 2023.  [Filing No. 87.]

### F.    Further Investigation Into the Ownership of 3709 North Drexel Avenue

After Mr. Phelps filed the pending Motion to Suppress, in which he disputes that Kimberly Barnes was a part-owner of 3709 North Drexel Avenue, FPD Intelligence Analyst Sanchez again searched the name Kimberly Barnes in the Marion County Assessor's property records and did not obtain any results.  [Filing No. 127-2 at 4.]  She then searched for 3709 North Drexel Avenue and learned that Tre Anthony Barnes, Kimberly Barnes' son, is currently listed as the sole owner in the Marion County Assessor's property records.  [Filing No. 127-2 at 4.]  In an attempt to understand this discrepancy, Analyst Sanchez contacted the Marion County Assessor's Office and learned that beginning in 2019, Kimberly Barnes was listed under "Owner Information" for 3709 North Drexel Avenue and her name would have appeared on the Marion County Assessor's property card for that residence as an owner at that time.  [Filing No. 127-2 at 4.]  Analyst Sanchez also learned from the Marion County Assessor's Office that on June 9, 2021, almost a year after the search warrant was issued, Tre Anthony Barnes emailed the Marion County Assessor and requested that Kimberly Barnes' name be removed from Marion County Assessor records for 3709 North Drexel Avenue.  [Filing No. 127-2 at 19 (Email from Tre Anthony Barnes to Marion County Assessor

---

[1] Neither Mr. Phelps nor the Government has provided the second search warrant or the second search warrant affidavit, but both agree that the KG15 rifle and Mr. Phelps' DNA were seized pursuant to the second warrant.  [*See* Filing No. 125 at 6-7; Filing No. 127 at 6.]

personnel with the subject "Drexel," stating "I Tre Anthony would like the name Kimberly Barnes to be removed from 3709 n. Ave 46218").][2]

## II.
### STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.   "[A] warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." Knox v. Smith, 342 F.3d 651, 658 (7th Cir. 2003).   "Reckless disregard for the truth" means that "the officer entertained serious doubts as to the truth of the statements, had obvious reasons to doubt their accuracy, or failed to disclose facts that he or she knew would negate probable cause." Betker v. Gomez, 692 F.3d 854, 860 (7th Cir. 2012) (quotations and citations omitted).

Under the Fourth Amendment, a defendant is entitled to a hearing to determine the validity of a search warrant where he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant

---

[2] In an effort to show that Kimberly Barnes was not an owner of 3709 North Drexel Avenue, Mr. Phelps attaches a Quitclaim Deed indicating that Tre Anthony Barnes was the sole grantee of the property, [Filing No. 125-3], and a Marion County Assessor property card for 3709 North Drexel Avenue reflecting that Tre Anthony Barnes is the sole owner of the property, [Filing No. 125-4]. But there is no indication that FPD Analysts reviewed the Quitclaim Deed, and the Marion County Assessor property card attached to Mr. Phelps' Motion to Suppress is for 2022 – well after the search warrant was issued and also after Tre Anthony Barnes emailed the Marion County Assessor to request that Kimberly Barnes be removed from the property records for 3709 North Drexel Avenue, [Filing No. 125-4].

in the warrant affidavit, and…the allegedly false statement [was] necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "These elements are hard to prove, and thus *Franks* hearings are rarely held" because the defendant "bears a substantial burden to demonstrate probable falsity." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quotations and citations omitted).

### III.
### DISCUSSION

Mr. Phelps argues that the search warrant affidavit contained a false statement – that Kimberly Barnes was a partial owner of 3709 North Drexel Avenue – and that Detective Tyler made this statement with intent or reckless disregard for the truth, that the search warrant affidavit did not establish probable cause without the false statement, and that a *Franks* hearing is needed to determine the validity of the warrant. He requests that evidence and statements obtained during the search of 3709 North Drexel Avenue be suppressed and that the charges against him be dismissed. The Court notes at the outset that the KG15 rifle and Mr. Phelps' DNA were seized pursuant to the second search warrant, but that Mr. Phelps' Motion to Suppress challenges the first warrant and the supporting search warrant affidavit. Additionally, Mr. Phelps does not specify what statements he made during the search that he seeks to suppress, nor whether they were made in connection with the first or second warrant. The Court follows Mr. Phelps' lead and limits its discussion to the first search warrant affidavit and resulting warrant, which led to the discovery of the KG15 rifle, law enforcement seeking the second warrant, and the ultimate seizure of the KG15 rifle and Mr. Phelps' DNA. The Court addresses each of Mr. Phelps' arguments in turn.

### A.    Whether There is a False Statement in the Search Warrant Affidavit

Mr. Phelps argues that stating that Kimberly Barnes was a partial owner of 3709 North Drexel Avenue in the search warrant affidavit "deceived Judge Felix when he was reviewing the

affidavit to determine probable cause." [Filing No. 125 at 15.]  He argues that law enforcement found Kimberly Barnes' home address to be 5066 Emerson Court South Drive, found through Bureau of Motor Vehicle records that she owned a 2000 Honda Accord, saw the Honda Accord parked in the back part of the driveway at 3709 North Drexel Avenue, and then "an assumption without further investigation was made that Kimberly had an ownership interest in 3709 [North] Drexel Avenue." [Filing No. 125 at 16.]  Mr. Phelps argues that the deed for the property, filed at the Marion County Recorder's Office, reflected that Tre Anthony Barnes was the sole owner of 3709 North Drexel Avenue and that "[w]ithout the connection between Kimberly Barnes and the property, there was no other evidence presented in the warrant and warrant affidavit to support a search of 3709 [North] Drexel Avenue." [Filing No. 125 at 17.]

In its response, the Government argues that the search warrant affidavit does not contain any misstatements because when it was drafted, Kimberly Barnes was listed in the Marion County Assessor records for 3709 North Drexel Avenue under "Owner Information" as "% Kimberly Barnes." [Filing No. 127 at 8.]  It asserts that the "%" notation typically means "in care of," or that correspondence regarding the property should go to that person, so does not necessarily indicate ownership. [Filing No. 127 at 8-9.]  The Government asserts, however, that the "% Kimberly Barnes" notation means that Kimberly Barnes' name would have appeared on the Marion County Assessor property card for 3709 North Drexel Avenue as an owner and would have been in the search results when FPD Intelligence Analysts searched the Marion County Assessor property records. [Filing No. 127 at 9.]  The Government points out that Kimberly Barnes' name was only removed from the property record for 3709 North Drexel Avenue when Tre Anthony Barnes requested that it be removed in 2021. [Filing No. 127 at 9.]

In his reply, Mr. Phelps argues that the Government "incorporated numerous factual allegations into its response that are not contained within the four corners of the warrant or the warrant affidavit," so a *Franks* hearing is appropriate.  [Filing No. 128 at 1.]  He contends that "[w]hile an Assessor property record can be informative, it is not dispositive as to ownership." [Filing No. 128 at 2.]

When law enforcement officials submit a search warrant affidavit, it is presumed that the factual showing they make "will be a truthful showing."  *Franks*, 438 U.S. at 164-65 (quotation, citation, and emphasis omitted).  Here, Detective Tyler made three statements in the search warrant affidavit related to Kimberly Barnes' connection with 3709 North Drexel Avenue:

- "I furthered my investigation and learned the Marion County Assessor's Office had a residence of 3709 N Drexel Ave. Indianapolis, IN listed for Kimberly…." [Filing No. 125-2 at 19.]

- "Furthermore, it has been established that Kimberly Barnes also is a partial owner of the address at 3709 N. Drexel Avenue in Indianapolis." [Filing No. 125-2 at 20.]

- "Detectives personally observed the [gold Honda Accord] to be sitting on the property at 3709 N. Drexel Avenue, the address partially owned by Kimberly Barnes." [Filing No. 125-2 at 20.]

Detective Tyler's statements were based on information from FPD Intelligence Analysts, including the August 20, 2020 emails from Analyst Sanchez and Analyst McFatridge, and the "Info Blast." [Filing No. 127-1 at 4.]  The FPD Intelligence Analysts interpreted the "% Kimberly Barnes" notation on the Marion County Assessor records to mean that Kimberly Barnes was a part-owner of 3709 North Drexel Avenue.  [*See* Filing No. 127-2 at 3-4.]  But, as the Government acknowledges in its response brief, the "%" notation actually means that correspondence regarding 3709 North Drexel Avenue should go to Kimberly Barnes and "does not necessarily indicate an ownership interest" in 3709 North Drexel Avenue.  [Filing No. 127 at 8-9.]  Given that the

Quitclaim Deed for 3709 North Drexel Avenue shows that the only grantee was Tre Anthony Barnes, [Filing No. 125-3], and that Tre Anthony Barnes was able to have Kimberly Barnes' name removed from the Marion County Assessor's records by emailing the Marion County Assessor, [Filing No. 127-2 at 19], the Court concludes that statements in the search warrant affidavit that Kimberly Barnes was a part owner of 3709 North Drexel Avenue were incorrect.  The Court goes on to consider whether those incorrect statements were made deliberately or with reckless disregard for their truth.

### B.   Whether the False Statements Were Made Deliberately or With Reckless Disregard for the Truth

In support of his Motion to Suppress, Mr. Phelps argues that the misstatements regarding Kimberly Barnes' part ownership of 3709 North Drexel Avenue "could only have been done intentionally or by reckless misrepresentation.  There is no other possible explanation…." [Filing No. 125 at 4.]  He asserts that "[a] simple trip to the Marion County Recorder's Office…revealed the deed for [3709 North Drexel Avenue] recorded in 2012 and valid to the date of this submission and titled in the name of [Tre Anthony] Barnes, and not Kimberly Barnes." [Filing No. 125 at 16-17.]

In its response, the Government argues that even if there were a materially false statement in the search warrant affidavit, Mr. Phelps must still make a preliminary showing that Detective Tyler acted with intent or reckless disregard for the truth and Mr. Phelps has not made that showing.  [Filing No. 127 at 9.]  It asserts that Detective Tyler made the statements regarding Kimberly Barnes' partial ownership of 3709 North Drexel Avenue in reliance on information provided to him by FPD Intelligence Analysts, including the August 20, 2020 emails from Analyst Sanchez and Analyst McFatridge, the "Info Blast" indicating that Kimberly Barnes was a "registered owner" of 3709 North Drexel Avenue, and surveillance notes stating that Kimberly

Barnes was one of the owners.  [Filing No. 127 at 9-10.]  The Government also points to the fact that Tre Anthony Barnes shared Kimberly Barnes' residence at 5066 Emerson, that a report for Kimberly Barnes from a personal information database listed 3709 North Drexel Avenue as one of her associated addresses, and that surveillance teams observed her car parked at 3709 North Drexel Avenue, where it remained until the search warrant was executed.  [Filing No. 127 at 11.] The Government argues that Mr. Phelps has not presented any evidence that Detective Tyler intentionally misstated facts relating to Kimberly Barnes owning 3709 North Drexel Avenue. [Filing No. 127 at 11-12.]

In his reply, Mr. Phelps argues that assessor records are not "official deeds of records," and implies that Detective Tyler should not have relied on those records for the search warrant affidavit.  [Filing No. 128 at 2.]

The Seventh Circuit has instructed that the requirement that a search warrant affidavit must not include false statement "does not mean that every fact in the affidavit must turn out to be correct," *United States v. Taylor*, 63 F.4th 637, 649 (7th Cir. 2023), but rather law enforcement may not obtain the search warrant "by deliberately or recklessly presenting false, material information to the issuing judge," *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013). "An affiant acts with reckless disregard for the truth when he in fact entertain[s] serious doubts as to the truth of his allegations." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013) (quotations and citations omitted).  The inquiry is subjective and "focuses on the officer's state of mind," and "[a] showing of reckless disregard requires more than a showing of negligence and may be proved from circumstances showing obvious reasons for the affiant to doubt the truth of the allegations." *Id.*

Detective Tyler relied on information provided to him by FPD Intelligence Analysts and an "Info Blast." [*See* Filing No. 127-1 at 2-5.]  Moreover, Analyst Sanchez based her conclusion that Kimberly Barnes was a part owner of 3709 North Drexel Avenue on misleading information from the Marion County Assessor's records, which included the "% Kimberly Barnes" notation under "Owner Information."  It is clear that the Marion County Assessor's records included that information in 2019, when Analyst Sanchez was gathering ownership information, because Tre Anthony Barnes then requested that the information be removed from the Marion County Assessor's records.

Mr. Phelps has not provided any evidence that Detective Tyler, in relying on information from FPD Intelligence Analysts, acted deliberately or with reckless disregard for the truth when he stated in the search warrant affidavit that Kimberly Barnes was a part owner of 3709 North Drexel Avenue.  His only attempt at doing so is his assertion that if Detective Tyler had examined the Quitclaim Deed for the property, he would have learned that Tre Anthony Barnes was the sole owner.  But, even if this were true, it does not constitute proof that Detective Tyler acted deliberately or with reckless disregard for the truth.  Indeed, the Court finds that Detective Tyler was entitled to rely on information provided by FPD Analysts, and Mr. Phelps has not presented any reason why Detective Tyler should have known that he could not rely on that information.  *See United States v. Melendez*, 530 F.Supp. 87, 89 (D. Mass. 2021) (rejecting argument that search warrant affiant relied too heavily on police department intelligence which caused him to omit information from search warrant affidavit and stating "[i]f the affiant did rely too heavily on [police department] intelligence, that reliance does not come close to the level needed to trigger a *Franks* hearing").  Mr. Phelps' argument that Detective Tyler acted deliberately or with reckless disregard for the truth is based on conclusory statements, which are insufficient to justify a *Franks* hearing.

- 14 -

*United States v. Daniels*, 906 F.3d 673, 677 (7th Cir. 2018) ("To secure a *Franks* hearing, a defendant must put forth 'an offer of proof' that is 'more than conclusory' and gestures toward more than negligent mistakes."); *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (requiring "direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had subjective intent to deceive" for a *Franks* hearing); *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) ("Conclusory, self-serving statements are not enough to obtain a *Franks* hearing.").

In short, while Detective Tyler's statements regarding Kimberly Barnes being a part owner of 3709 North Drexel Avenue were incorrect, Mr. Phelps has not presented any evidence that Detective Tyler was deliberately untruthful or acted with reckless disregard for the truth. While this provides a sufficient basis for the Court to deny Mr. Phelps' request for a *Franks* hearing and his Motion to Suppress, in the interest of thoroughness the Court goes on to consider whether the search warrant affidavit established probable cause even without the statements regarding Kimberly Barnes' ownership interest in 3709 North Drexel Avenue.

### C.   Whether There Was Probable Cause for the Search Warrant Absent The Incorrect Statements

In support of his Motion to Suppress, Mr. Phelps asserts that the warrant does not set forth criminal activity happening at or near 3709 North Drexel Avenue, "but for its alleged link to an ownership interest by Kim Barnes," and that "Kim Barnes is not named as grantor or grantee of the property deed from 2012 to the present, and therefore the alleged 2020 chain of criminality link through her never existed." [Filing No. 125 at 14-15.] He also argues that law enforcement did not act in good faith in obtaining the warrant for 3709 North Drexel Avenue because they focused on Da'Monty within ten days of the August 13 homicide and also focused on Kimberly Barnes because she was Da'Monty's grandmother, which caused "confusion and recklessness [to enter] the assessment process." [Filing No. 125 at 15.] Mr. Phelps asserts that Kimberly Barnes'

vehicle was not identified as being involved in the August 13 homicide. [Filing No. 125 at 15.] He contends that the totality of the circumstances lead to the conclusion that the warrant is invalid, including that neither Kimberly Barnes, Da'Monty McCullough, or Danyell McCullough (Da'Monty's mother) had an ownership interest in 3709 North Drexel Avenue; there was no known criminal activity taking place at 3709 North Drexel Avenue; neither Tre Anthony Barnes, Mr. Holder, or Mr. Phelps were named in the search warrant affidavit or the warrant; the property was not put under surveillance, other than one drive-by by law enforcement; no confidential informants provided information indicating that there was criminal activity at 3709 North Drexel Avenue; there was no explanation as to why evidence relating to two homicides would be found at the property; neither Kimberly Barnes, Da'Monty McCullough, or Danyell McCullough were seen at 3709 North Drexel Avenue before the search warrant affidavit and warrant were served; Da'Monty's cell phone did not ping at relevant times on or in 3709 North Drexel Avenue prior to the search warrant affidavit and warrant being served and even if it had, it is not known who possessed his phone at that time; there were not emergency circumstances when the search warrant affidavit and warrant were served; officers were not engaged in a hot pursuit; and there was no known direct connection to the August 13 homicide investigation and Kimberly Barnes' gold Honda Accord. [Filing No. 125 at 17-19.]

In response, the Government argues that even without the statements regarding Kimberly Barnes' part ownership of 3709 North Drexel Avenue, Mr. Phelps is still not entitled to a *Franks* hearing because probable cause for the search warrant still would have existed based on the fact that the search warrant affidavit stated: that the Marion County Assessor's Office "had a residence of 3709 N. Drexel Ave. Indianapolis, IN listed for Kimberly [Barnes]," which was true by virtue of the "%" notation; that "the car parked at the Drexel residence and registered to [Kimberly]

Barnes, the grandmother and legal guardian of one of the murder suspects, had identical characteristics to the car seen on surveillance fleeing the scene of the homicide"; that Da'Monty's phone was located in the area of 3709 North Drexel Avenue less than an hour after the homicide; and that firearms are difficult to destroy, discard, and hide and Detective Tyler believed they would be found during a search.  [Filing No. 127 at 13-15.]

    Mr. Phelps reiterates his arguments regarding why he believes that the search warrant affidavit did not establish probable cause for the search of 3709 North Drexel Avenue without the statements regarding Kimberly Barnes' part ownership of the property.  [Filing No. 128 at 2-6.]

    "Probable cause deals with probabilities," and "is concerned with the factual and practical considerations of everyday life on which reasonable and prudent persons, and not legal technicians, act." *Taylor*, 63 F.4th at 651 (quotations and citations omitted).  Probable cause exists "when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *McMurtrey*, 704 F.3d at 508.   A judge considering an application for a warrant should "simply…make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

    Omitting Detective Tyler's statements regarding Kimberly Barnes being a part owner of 3709 North Drexel Avenue leaves the following information which connected the August 13 homicide suspect to that address:

- The car parked at 3709 North Drexel Avenue had identical characteristics to the car that law enforcement had identified as the suspect's car through surveillance video and based on witness statements – including an "In God We Trust" license

plate, a dark-colored horizontal runner running along the entire side of the car, dark handles, and a missing hubcap on the front passenger's side tire;

- The car was registered to Kimberly Barnes;

- Kimberly Barnes is Da'Monty's grandmother;

- Da'Monty's cell phone was traced to the area where 3709 North Drexel Avenue is located less than an hour after the August 13 homicide;

- Da'Monty was feuding with TP over the murder of Da'Mario on March 29, 2020; and

- Firearms are possessed for longer periods of time than other illegal items, are more difficult to destroy, discard, and hide, and were likely to be found at 3709 North Drexel Avenue.

[*See* Filing No. 125-2.]

The Court finds that these facts would have been sufficient – without the statements regarding Kimberly Barnes' connection to 3709 North Drexel Avenue – for Judge Felix to have a "substantial basis" for finding the probable cause necessary for issuance of the search warrant. *See Gates*, 462 U.S. at 236-37 (judge issuing warrant must have "substantial basis [to conclude] that a search would uncover evidence of wrongdoing").  The key connections to 3709 North Drexel Avenue that Detective Tyler outlined were that a car which shared the distinctive characteristics of the suspect's car identified in surveillance video and through witness statements was seen parked there, the car was registered to Kimberly Barnes, Kimberly Barnes is Da'Monty's grandmother, and Da'Monty had a motive to kill TP based on the March 29, 2020 murder of Da'Mario.  The totality of the circumstances described in the search warrant affidavit, excluding the information regarding Kimberly Barnes' part ownership of 3709 North Drexel Avenue, was sufficient for Judge Felix to conclude that probable cause existed to search 3709 North Drexel Avenue. *See United States v. Colon*, 2020 WL 4597158, at *4 (D. Del. Aug. 11, 2020) (incorrect statements in search warrant affidavit regarding connection between suspect and two properties were not material to

probable cause finding based on thorough and detailed affidavit).  The existence of probable cause without the statements regarding Kimberly Barnes' part ownership of 3709 North Drexel Avenue provides another basis for denial of Mr. Phelps' Motion to Suppress.

### D.      Whether the Good Faith Exception Applies

Finally, the Government argues in its response brief that Detective Tyler presumptively acted in good faith since he sought a search warrant, and that Mr. Phelps has not shown that the issuing judge abandoned his or her role as a neutral and detached arbiter, that the officers had a reckless disregard for the truth or were dishonest in preparing the search warrant affidavit, or that the search warrant affidavit was so lacking in probable cause that no officer could have reasonably relied on it.  [Filing No. 127 at 16.]  Accordingly, it argues, the good faith exception applies and evidence obtained during the search of 3709 North Drexel Avenue should be admitted at trial. [Filing No. 127 at 16.]

Mr. Phelps does not specifically address the good faith exception in his reply, but simply states that a *Franks* hearing is needed to "resolve…the alleged 'good faith' exception advanced by the government."  [Filing No. 128 at 5-6.]

The good faith exception provides that evidence obtained as a result of a Fourth Amendment violation should not be suppressed if law enforcement had a "reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment."  *United States v. Leon*, 468 U.S. 897, 909 (1984) (quotations and citations omitted).  Exclusion of such evidence is unwarranted because the exclusionary rule's "sole purpose…is to deter future Fourth Amendment violations."  *Davis v. United States*, 564 U.S. 229, 236-37 (2011); *see also United States v. Brown*, 744 F.3d 474, 476 (7th Cir. 2014).  Indeed, "[i]n light of the substantial societal costs of the rule, and recognizing that the primary, if not sole, justification for the exclusionary rule is the deterrence

- 19 -

of police misconduct, the Supreme Court [has held] that suppression of evidence is not an appropriate remedy when the officers who obtained the evidence did so in good faith reliance upon a facially valid warrant issued by a magistrate or judge." *United States v. Mitten*, 592 F.3d 767, 770 (7th Cir. 2010).

"In deciding whether an officer was acting in good faith, the fact that the officer sought to obtain a warrant is prima facie evidence that he was acting in good faith." *Id.* at 771 (citing *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009)).  This presumption can be rebutted, however, if the defendant shows that: "(1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008).

Detective Tyler sought a search warrant, which is prima facie evidence that he was acting in good faith.  Mr. Phelps has not rebutted this presumption because he has not shown that Judge Felix "abandoned his detached and neutral role," *id.*; as discussed above, Mr. Phelps has not shown that Detective Tyler was dishonest or reckless in preparing the search warrant affidavit; and Mr. Phelps has not shown that the warrant was so lacking in probable cause that the executing officers' belief in its existence was entirely unreasonable.  Accordingly, the good faith exception is an alternative basis  for denying Mr. Phelps' Motion to Suppress.

In sum, while Detective Tyler's statements in the search warrant affidavit regarding Kimberly Barnes' part ownership of 3709 North Drexel Avenue ultimately proved to be incorrect, Mr. Phelps has not shown that Detective Tyler deliberately made false statements or made them with reckless disregard for the truth.  Additionally, even if Mr. Phelps had made such a showing, the search warrant affidavit – not including the statements about Kimberly Barnes' part ownership

of 3709 North Drexel Avenue – established probable cause and provided Judge Felix with a substantial basis to issue the search warrant.  Finally, even if the search warrant violated the Fourth Amendment, the good faith exception applies to the circumstances of this case.  Accordingly, the Court **DENIES** Mr. Phelps' Motion to Suppress, [Filing No. 125], to the extent that it declines his request to hold a *Franks* hearing, declines to dismiss the charges in this matter, and finds that evidence and statements obtained during the search of 3709 North Drexel Avenue will be admissible at trial.

### IV.
### CONCLUSION

For the foregoing reasons, Mr. Phelps' Combined Motion to Suppress Search Warrant and All Items Seized from Search of 3709 Drexel Avenue, Indianapolis, and All Statements Taken from Ryan Phelps; Franks Motion; Motion to Dismiss Charge; and For Combined Hearing on Motions, [125], is **DENIED** to the extent that the Court declines to hold a *Franks* hearing, declines to dismiss the charges against Mr. Phelps, and finds that evidence and statements obtained during the search of 3709 North Drexel Avenue will be admissible at trial.  The final pretrial conference in this matter remains scheduled for **November 8, 2023** at 10:00 a.m. and the jury trial remains set for **November 27, 2023**.

Date: 8/11/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

- 21 -